UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NADA ABBAS,

Plaintiff,

v.

MUSCLE MARKETING USA, INC.,

Defendant.

Case No. 3:24-cv-00206-MMD-CSD

ORDER

## I.    SUMMARY

This action arises from Plaintiff's purchase of ATP-Creatinol Serum ("ATP Supplement") from Defendant Muscle Marketing USA, Inc. (ECF No. 1.) Plaintiff alleges the serum contained a substance prohibited by World Anti-Doping Agency ("WADA") regulations which Defendant failed to disclose, resulting in Plaintiff's suspension from her professional squash competition. (*Id.*) After a hearing, the Court entered default judgment. (ECF Nos. 44, 50.) Before the Court is Defendant's motion to set aside default judgment. (ECF No. 59 ("Motion").)[1] For the reasons discussed herein, the Court denies the Motion.

## II.    RELEVANT BACKGROUND

### A. Underlying Facts[2]

Plaintiff is an international squash player who was subject to "routine in-competition urine and blood testing" for substances banned under the WADA regulations. (ECF No. 1 at 3.) Defendant marketed its products as "of premium quality" and does not

---

[1]Plaintiff filed a response. (ECF No. 60.) Defendant filed a reply which was docketed as a motion to set aside default judgment. (ECF No. 63.) The Court denies this second motion (ECF No. 63) as incorrectly docked and construes the filing as Defendant's reply.

[2]The following facts are adapted from the Complaint. (ECF No. 1.)

list methylhexanamine or any other WADA prohibited substance as an active ingredient in its ATP Supplement. (*Id.*) Plaintiff used Defendant's ATP Supplement intermittently between October 1, 2021 and May 28, 2022. (*Id.*) On May 28, 2022, Plaintiff submitted an in-competition urine sample that tested positive for methylhexanamine, leading Plaintiff to accept voluntary suspension from competition and precluded her from further international competition. (*Id.* at 4.) A later test of the ATP Supplement confirmed that it contained methylhexanamine which was the source of her positive urine test. (*Id.* at 4-5.) Based on these allegations, Plaintiff asserts claims for negligence, strict products liability, breach of implied warranty, and intentional and negligent misrepresentation. (*Id.* at 5-19.) Plaintiff seeks damages, including non-economic damages, and attorneys' fees and costs. (*Id.*)

### B. Procedural History

Plaintiff filed her Complaint on May 8, 2024. (ECF No. 1.) Defendant filed an answer on June 26, 2024. (ECF No. 11.)

At a hearing on December 20, 2024, the Magistrate Judge granted Defendant's counsel's motion to withdraw and informed Defendant's CEO, Amir Zeibak, of the need to obtain replacement counsel because as a corporation, Defendant cannot represent itself. (ECF No. 29.) The Magistrate Judge gave Zeibak until January 21, 2025 to obtain new counsel for Defendant. (*Id.*) On January 27, 2025, Defendant having failed to obtain counsel, the Magistrate Judge recommended striking Defendant's answer and entering default judgement against Defendant. (ECF No. 34 ("R&R").)

On March 31, 2025, the Court adopted the R&R, directed default be entered against Defendant under Rule 55(a) of the Federal Rules of Civil Procedure and gave Plaintiff 30 days to file a motion for default judgment. (ECF No. 37.) The Clerk entered default the next day (ECF No. 38) and Plaintiff filed her motion for default judgment on April 30, 2025 (ECF No. 39 ("Motion for Default Judgment")). On May 19, 2025, the Court issued a minute order setting a hearing on the Motion for Default Judgment, directing Plaintiff to be prepared to address the amount of non-economic damages requested.

(ECF No. 42.) At the subsequent hearing held on June 9, 2025, Plaintiff testified as to her non-economic damages. (ECF No. 44.) The Court issued an oral ruling granting the Motion for Default Judgment and directed Plaintiff to submit a proposed order. (*Id.*) On June 23, 2025, the Court issued an order granting default judgment. (ECF No. 48.) On June 26, 2025, Zeibak filed a document in response to the Motion for Default Judgment. (ECF No. 49.) The Court struck this late filing as the Court had already granted judgement. (ECF No. 51.) Judgement was entered in favor of Plaintiff on June 27, 2025. (ECF No. 50.)

On December 8, 2025, about six months after default judgment was entered and a year after Defendant's counsel withdrew, Defendant filed the Motion, seeking to set aside default judgment. (ECF No. 59.)

## III.   DISCUSSION

Defendant seeks to set aside the default judgment based on hardships—medical conditions and treatment as to Zeibak and business disruptions as to Defendant—during the time period of former defense counsel's withdrawal and the entry of default. (ECF No. 59.)

Under Rule 55(c), a district court may set aside the entry of default upon a showing of good cause. *See* Fed. R. Civ. P 55(c). Where, as here, default judgment has already been entered, relief is governed by Rule 60(b). However, when a defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect," the court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). *See U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010)*. These three factors are: "'(1) whether the plaintiff will be prejudiced, (2) whether the defendant has [no] meritorious defense, and (3) whether culpable conduct of the defendant led to the default.'" *Brandt v. Am. Bankers Ins. Co. of Fla., 653 F.3d 1108, 1111 (9th Cir. 2011)* (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).  These factors, known as the "'*Falk* factors,'" are disjunctive. *Id.* at 1111. In other words, the court may refuse to set aside the default if it holds any one of the three factors is true. *See Mesle*, 615 F.3d at

1091. Moreover, the court has greater discretion in setting aside an entry of default, rather than a default judgement. *See O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994) (citation omitted).

Defendant argues it can satisfy all three *Falk* factors. (ECF No. 59.) Plaintiff responds that Defendant cannot satisfy any of the *Falk* factors. (ECF No. 60 at 9.) The Court finds Defendant's culpable conduct led to default judgment and agrees with Plaintiff's argument that she will suffer prejudice.

Culpable behavior "usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court: for instance, when companies act to avoid service in order to thwart their customers' attempts to bring suit against them." *Mesle*, 615 F.3d at 1094. Here, Defendant knew of the deadline to retain new counsel because Ziebak attended the hearing where the Magistrate Judge established the January 21, 2025 deadline. (ECF No. 29.) Defendant also knew that Plaintiff filed the Motion for Default Judgment because Ziebak filed a response that the Court struck. (ECF No. 49.) However, Defendant did not take any action to show its efforts to retain counsel and instead waited until Plaintiff sought to collect on the judgment to file the Motion, a year after defense counsel filed the motion to withdraw. While Ziebak asserts in his two declarations that he experienced health issues and Defendant experienced business disruptions (ECF Nos. 59-1, 63-1), the timing of these experiences do not explain Defendant's failure to comply with the Court's order to retain counsel or to ask for an extension of time if needed. For example, Ziebak states he began to experience severe pain in January 2024 and had lumber surgery on June 7, 2024 with follow up care afterward. (ECF No. 59-1 at 3.) But Plaintiff filed the Complaint in May 2024 and Defendant filed an answer and appeared to defend the action during that same period of time. So Ziebak's health issues did not affect defense of this action in 2024. Ziebak further asserts that throughout late 2024 and into 2025, his "condition and treatment significantly affected [his] ability to manage business and legal matters." (*Id*.)  But as Plaintiff points out, Ziebak appeared at the hearing on Defendant's counsel's motion to

withdraw and filed a response to the Motion for Default Judgment where he did not mention any health issues as reasons for his failure to retain counsel for Defendant. (ECF No. 60 at 9.) As for Defendant's business disruptions, Defendant asserts that on February 6, 2025, Amazon Vendor Central issued a notice to terminate their relationship effective April 7, 2025.[3] (ECF No. 59-1 at 3.) But that event occurred after the deadline for Defendant to retain counsel so it cannot be offered as a reason for Defendant's failure to comply with the deadline. In sum, the Court finds Defendant cannot meet the third *Falk* factor—that Defendant was not culpable—to support setting aside default judgment.

Moreover, Defendant cannot satisfy the first *Falk* factor—lack of prejudice to Plaintiff. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TGI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001). Rather, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* at 701 (citing *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429 (6th Cir. 1996)). Plaintiff primarily points to prejudice from loss of evidence and difficulties with discovery based on Defendant's claim of "loss of access to certain records" and the unresolved discovery disputes[4] before default judgment. (ECF No. 60 at 11-12.) Under the circumstances here, the Court agrees that setting aside the judgment would be prejudicial to Plaintiff.

"'[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463) (alternation in original). However, Defendant's culpable

---

[3]Ziebak asserts that Defendant "also experienced operational disruptions affecting access to business records, including loss of access to certain records maintained at the Company's Lynnwood warehouse." (ECF No. 59-1 at 3.) However, Ziebak does indicate when these disruptions occurred.

[4]Ziebak's deposition on November 15, 2024, had to be continued when Ziebak refused to answer questions based on a non-disclosure agreement. (ECF No. 10 at 3.) According to Plaintiff, defense counsel at the time indicated he would prepare a protective order but he then filed the motion to withdraw as counsel shortly thereafter. (*Id.* at 3-4.)

conduct and prejudice to Plaintiff counsel against setting aside default judgment. Accordingly, the Court will deny the Motion.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion.

It is therefore ordered that Defendant's motion to set aside default judgment (ECF No. 59) is denied.

It is further ordered that Defendant's second motion to set aside default judgment (ECF No. 63) is denied as incorrectly docketed as a motion instead of a reply.

DATED THIS 15th Day of June 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE